## Christman, Appellant, *v.* United Natural Gas Company.

Argued April 18, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harold R. Fink, Jr.,* for appellant.

*Benjamin G. McFate,* with him *McFate, McFate and McFate,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, August 6, 1968:

Appellant, in August of 1948, leased certain land in Wharton Township, Potter County from the County, for the purpose of operating for gas and oil. Two producing gas wells were drilled by appellant in 1948 and 1949 and production continued until April of 1963. On the latter date, appellee instituted proceedings to condemn the two gas wells. In due course, a board of view was appointed and assessed damages. Appellee's appeal of the viewer's award resulted in a jury verdict considerably smaller than the award of the board of view. This appeal followed the denial of appellant's motions for new trial and judgment n.o.v. and the entry of judgment on the jury's verdict.

The question requiring our consideration is the proper measure of damages for the taking here involved. Appellant argues that one of the factors which should have been considered was the value of the two wells for gas storage purposes. Appellee, on the other hand, contends that the condemnee was entitled to the fair market value of his property, taking into consideration the present use of the property and its value for that use; the highest and best reasonably available use to him of that property and its value for such use; and the machinery, equipment and fixtures forming part of the real estate taken. Appellee argues that appellant received the value of all of these items even though the court below refused to allow testimony relative to the value of the 2 wells for gas storage purposes. The court, of course, did allow testimony on the value of the remaining gas, the machinery and all of the items which appellee concedes were properly compensable. The narrow question, then, is whether the trial court erred in refusing to permit the jury to consider the possible use of the premises for gas storage purposes by the condemnor.

The problem of the effect on market value of the possibility of a different use being made of condemned

land is not a novel one. Most recently, in *Pa. Gas &
Water Co. v. Pa. Turnpike Comm.*, 428 Pa. 74, 236 A.
2d 112 (1967), we had occasion to review in detail the
law in this field. In that case, we reversed and re-
manded in order that the condemnee water company
might have the opportunity to introduce evidence on
the issue of a reservoir as the highest and best use of
the condemned land, even though the land was not be-
ing put to such a use at the time of the condemnation.
After reviewing the case law, Mr. Justice ROBERTS,
speaking for the majority, significantly said in the foot-
note at page 82, "In citing these three cases we wish
to make clear that we are using them only for the
proposition that a condemnee is not bound by the use
currently being made of his property if it is physically
suited for some other purpose. These cases do not
stand for the proposition that a condemnee farmer can
recover reservoir damages when *no* demand for a reser-
voir exists other than that shown by the condemnation
*and* where the farmer himself is unable to construct a
reservoir. In each of these cases above there was evi-
dence that other buyers were interested in the farmer's
property for private reservoir use, thus establishing a
market value for that use. Of course, when, as in the
present case, the condemnee is a water company which
can, *itself,* construct a reservoir, the absence of a mar-
ket value based on demand will not preclude the show-
ing of a reservoir as the highest and best use. . . ."
(emphasis in original).

Although this court was divided in *Pa. Gas,* there
was agreement on the critical determination which
controls the case at bar. In his dissent, Mr. Justice
EAGEN, apropos of the material quoted from Mr. Jus-
tice ROBERTS, said, at page 88, "Moreover, [the ma-
jority] concedes, as it must, that if the situation were
reversed and the same land was condemned by the wa-
ter utility, the private owner or condemnee could not

collect on the basis that the land was adaptable to reservoir use unless he could also establish that a demand for private reservoirs exists to give the land market value for that use."

In the instant case, appellant is in the position of the private owner of Justice EAGEN's hypothesis. For his land to have market value for gas storage purposes, he must establish a private demand for gas storage, as in the hypothesis of the dissent, or that his land could have been used for that purpose by him, as was the situation existing with the condemned land in *Pa. Gas*. Appellant can meet neither requirement.

Appellee owned some 85% of the entire gas field prior to the condemnation and only it could utilize the field for gas storage purposes. Appellant did not control sufficient acreage to utilize his land for storage purposes, even if the serious question of whether the right to use the land in that fashion existed under his production lease were decided in his favor. The only demand for storage was that of the condemnor, and its use of the land for such purposes may not be used to enhance the value of the land where such use was not reasonably available to the condemnee.

One additional matter requires comment. Appellant contends that the cost of drilling to deeper sands should be considered in consequence of the taking of his wells. There is a serious question of whether, under his lease, appellant had a right to explore below the Oriskany horizon. Even if such a right exists, we agree with the court below that such a possible use is too speculative and remote to be a reasonably available use of the property.

Holding, as we do, that the value of the condemned wells for storage purposes was not a part of appellant's loss, we conclude that the court below properly summarized the matter in its opinion, as follows: "There seems to be no argument between the parties that fair

market value is to be determined by agreement on a price which a willing and informed seller and buyer fix, taking into consideration (1) the present use of the property and its value for such use, (2) the highest and best reasonably available use of the property and its value for such use, and (3) the machinery, equipment and fixtures forming part of the real estate taken.

"There was much testimony taken as to the operation of the gas wells, the amount of gas taken and the amount of gas that reasonably could be anticipated as remaining for the taking at the time the property was condemned. The production figures afforded certain expert witnesses material from which to testify as to what future production would have been to the point it would not have been economically profitable.

"Testimony was also produced showing the value of the pipe and machinery taken by the condemnor." The jury's verdict was based on evidence establishing the value of everything for which appellant was entitled to compensation and the judgment entered thereon must be affirmed.

Judgment affirmed.